COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SIMIONE MATEKITONGA TENIFA a/k/a SIMIONE TENIFA, | § | No. 08-07-00177-CR |
| Appellant, | § | Appeal from |
| v. | § | 213th District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC # 1032562D) |

**O P I N I O N**

Simione Matekitonga Tenifa a/k/a Simione Tenifa appeals his conviction of aggravated robbery with a deadly weapon. After Appellant entered a plea of guilty before the jury, the trial court conducted a unitary proceeding, rather than a bifurcated trial. TEX.CODE CRIM.PROC.ANN. art. 26.14 (Vernon 2009); *see Frame v. State*, 615 S.W.2d 766, 767 (Tex.Crim.App. 1981). The jury found Appellant guilty of aggravated robbery as alleged in the indictment and assessed his punishment at imprisonment for a term of ten years. The trial court entered an affirmative deadly weapon finding in the judgment. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On August 2, 2006, Michael Gaskins was working the overnight shift at a 7-11 convenience store. The store manager, Clinton Miller, was also there ordering inventory. At around 4 a.m., Appellant and another man walked into the store. Miller greeted them and returned his attention to his inventory. Gaskins was making coffee when he heard the door beep indicating that someone had come into the store. He continued working at the coffee machines and glanced over his shoulder to see who had come in. Without warning, Appellant struck him across the face with a beer bottle. The

bottle broke and caused a severe laceration to Gaskins' face. Gaskins fell to the ground but got back up quickly because he feared Appellant would continue to attack him. He ran into the cold vault and braced the door with his foot in an effort to keep Appellant away from him. After striking Gaskins, Appellant and his accomplice stole beer and cigarettes. Appellant also threatened to harm Miller and pushed him into some groceries before running out the door. Miller then called the police. Gaskins underwent facial surgery to repair the damage inflicted by Appellant. The robbery was captured on surveillance video in the store and Appellant was eventually identified and arrested. Appellant signed a written confession admitting that he struck Gaskins with a beer bottle and stole cigarettes.

At trial, Appellant testified that he had drunk more than twenty beers on the evening of the robbery. When the beer ran out, Appellant, accompanied by the co-defendant Sika, his cousin Kali, and John Ollie, went to the 7-11 to steal some more. He carried the beer he was drinking into the store. Sika went to steal the beer and Appellant decided to steal cigarettes. He did not see Gaskins when he first walked into the store. When Appellant saw Gaskins, it surprised him and he reacted by striking him with the beer bottle. Appellant admitted planning to steal beer but denied he had planned to harm anyone.

## IMPROPER QUESTIONING AND FINAL ARGUMENT

In Issue One, Appellant complains that the trial court erred by permitting the State to characterize his prior thefts as robberies during cross-examination and final argument because it amounted to placing improper and inaccurate evidence before the jury. Appellant testified that he had gone on two or three "beer runs" when he lived in Arizona. He described a "beer run" as going into a store and taking beer without getting caught. His attorney suggested that this offense began as a "beer run" and he elicited testimony from Appellant that he had not planned to hurt anyone but had simply reacted when the clerk surprised him. Defense counsel also elicited testimony from Appellant

that he did not blame his cousin, Kali, because the "beer run" was not her idea. During cross-examination, the prosecutor established that in the past, one person had always gone into the store with Appellant on the "beer runs" and he always had a driver. Even though the co-defendant had said they planned to steal both beer and cigarettes from 7-11, Appellant insisted that they had not planned to steal cigarettes. The following exchange then occurred:

[Prosecutor]: And you are really the mastermind behind this, right?

[Appellant]: I wouldn't say that.

[Prosecutor]: I mean, it was your idea, right?

[Appellant]: To?

[Prosecutor]: To do the crime you are on trial for?

[Appellant]: I didn't plan anything to hit him.

. . .

[Prosecutor]: I mean, when you are at this party and the beer is gone, you're the one that is the ringleader, right?

[Appellant]: Yes.

[Prosecutor]: I mean, your codefendant, Mr. Sika, wasn't with you when you went on all these other robberies out state, was he?

[Appellant]: No.

[Defense counsel]: Object to the characterization of robbery. That alludes to the fact that somebody would have been hurt.[1] It has been state [sic] those are theft cases.

[Trial court]: Overruled.

[Prosecutor]: And Kali, your cousin, wasn't with you when you committed these

---

[1] Defense counsel was not correct that robbery only occurs where there is injury. A person commits robbery if, in the course of committing theft and within intent to obtain or maintain control of property he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.02 (Vernon 2003).

robberies out of state?

[Appellant]:  No.

[Prosecutor]:  Was she?

[Appellant]:  No.

[Prosecutor]:  And John Ollie wasn't with you when you committed these other robberies out of state, was he?

[Appellant]:  No.

[Prosecutor]:  So you're the only one that knows how to get this done, right?

[Appellant]:  Yes.

[Prosecutor]:  You are the accomplished thief among the four of you, right?

[Appellant]:  Yes.

[Prosecutor]:  Bu t you want this jury to believe that there was no plan as to who was going to get the beer and who was going to get the cigarettes?

[Appellant]:  Yes.

[Prosecutor]:  Right?

[Appellant]:  Yes.

[Prosecutor]:  In fact, it was your idea to park the car behind the 7-Eleven,  right?

[Appellant]:  Yes.

.     .     .

[Prosecutor]:  I'm going to ask you again on the other thefts, the other robberies that you committed with your friends or associates out of state, where did you park in the past?

[Appellant]:  I don't know.

On redirect, Appellant's counsel revisited the subject of the out-of-state offenses:

[Defense counsel]:  And these other incidents that Ms. Jack wants to characterize as

a robbery, was anybody injured?

[Appellant]:  No.

[Defense counsel]:  In fact, Ms. Jack had already told the prospective panel of jurors that robbery involves an injury, does it not?

[Appellant]:  Yes.

[Defense counsel]:  And theft involves stealing, correct?

[Appellant]:  Yes.

[Defense counsel]:  Kali, your driver, was given a ticket for stealing because she wasn't involved in any idea about hurting someone, correct?

[Appellant]:  Yes.

[Defense counsel]:  So Ms. Jack just keeps using the term robbery.  She should be using theft, right?

[Appellant]:  Yes.

During final argument, defense counsel portrayed Appellant as a simple, straightforward person and not the criminal mastermind the State had portrayed him to be.  He added:

He wasn't committing robberies.  He was committing petty thefts.  And he continued to do that until one night when he was drunk and it went bad.

The prosecutor replied to this argument as follows:

As compared to this Defendant who we found out, a surprise to us all, how accomplished a thief he was.  And I will tell you why I think there were robberies out of state.  Because you watch that tape and you see how very quickly how he is able to succeed in his endeavor.  He is not surprised.  He is not shocked.  He didn't go directly to the cigarettes.  In fact, he goes the opposite direction directly toward the clerk.  He knows exactly what he is going to do.

*Preservation of Error*

The State first argues that Appellant's contentions are not preserved for review because he failed to object at trial.  In order to preserve error, a party must make a timely and specific objection

when improper evidence or argument is presented. TEX.R.APP.P. 33.1. Further, a party must continue to object and obtain an adverse ruling unless the party obtains a running objection. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex.Crim.App. 1999)(party must object every time inadmissible evidence is offered); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991)(same); *Valdez v. State*, 2 S.W.3d 518, 521-22 (Tex.App.--Houston [14th Dist.] 1999, pet. ref'd) (any error in repeated argument that defendant was pedophile waived by failure to object each time State characterized him as pedophile). To preserve error from improper jury argument, a party must make a timely and specific objection to the argument and pursue the objection to an adverse ruling. *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex.Crim.App. 2002); TEX.R.APP.P. 33.1. Although Appellant timely objected to the first question, he did not continue to object to the prosecutor's subsequent questions in which she referred to the prior bad offenses as robberies. Consequently, Appellant failed to preserve error with respect to the prosecutor's cross-examination. He also waived any complaint about the prosecutor's final argument.

Even if Appellant had preserved his complaint, it is without merit. Appellant argues that the State improperly asked the jury to compare the instant offense with the prior offenses. But it was Appellant who first suggested that a comparison could be drawn. Appellant introduced evidence of his prior crimes and referred to them as "beer runs." By arguing that the instant offense was a "beer run gone bad," Appellant effectively invited the jury to compare the prior offenses with the instant one in an apparent effort to convince the jury that he had not planned to harm anyone. The State is entitled to respond to Appellant's argument and urge that the jury draw a different conclusion based on the evidence. Nor was the jury obligated to believe Appellant's testimony that he did not plan to hurt anyone or that his prior offenses involved only theft because no one got hurt. The prosecutor properly challenged Appellant's credibility by pointing to the video depicting the robbery and asking

the jury to observe the calm and determined manner in which Appellant committed this aggravated robbery. She drew the jury's attention to how Appellant, based on his prior criminal experience, planned different aspects of the offense, including each person's role in it and where they would park the car. She emphasized how he calmly and deliberately walked into the 7-11 carrying a beer bottle down by his leg, walked straight to the clerk, and struck him in the face with the bottle without warning. Given the conflict between Appellant's version of the instant offense and the other evidence admitted at trial, including the video, it was permissible for the prosecutor to draw inferences from the evidence and suggest Appellant was not truthful about the aggravated robbery or in his portrayal of the prior offenses as only theft. Issue One is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue Two, Appellant complains that he was denied the effective assistance of counsel at trial because his attorney failed to object to the prosecutor's cross-examination and final argument characterizing his prior bad acts as robberies rather than petty theft. In *Strickland v. Washington*, the United States Supreme Court adopted a two-step analysis as the proper standard for determining claims of ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Appellant must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. He must prove by a preponderance of the evidence that counsel's representation fell below the standard of professional norms. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Second, Appellant must show that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, Appellant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability "sufficient to undermine confidence in the outcome."

*Id*. This two-pronged test is used to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial produced unreliable results. *Mallet v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).

Appellate review of defense counsel's conduct is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallet*, 65 S.W.3d at 63; *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). The burden to overcome that presumption falls on Appellant. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The assessment of whether effective assistance was received must be made according to the facts of the case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Any allegation of ineffectiveness must be "firmly founded" in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005). To defeat the presumption of reasonable professional assistance, the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. In the majority of instances, the record on direct appeal is undeveloped and unable to adequately reflect the failings of trial counsel. *Thompson*, 9 S.W.3d at 813-14, *citing Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim.App. 1998). It will not sufficiently show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). We cannot speculate that no plausible professional reason exists for a specific act or omission. *Id*. Counsel should ordinarily be provided an opportunity to explain their actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App. 2003).

Appellant did not file a motion for new trial raising his allegations of ineffective assistance. Consequently, the record is silent with respect to trial counsel's strategy in not objecting to the prosecutor's characterization of the prior offenses as robberies. On such a silent record, we can find

ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005).

We determined in our review of Issue One that the State did not err by referring to Appellant's prior offenses as robberies. Trial counsel cannot be found ineffective for failing to object to this line of questioning or to the final argument. *See Ex parte Thompson*, 179 S.W.3d 549, 559-60 (Tex.Crim.App. 2005)(defendant not entitled to jury charge on lesser-included offense; therefore, counsel not ineffective for failing to request); *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992)(counsel not ineffective by failing to object to admissible evidence), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex.Crim.App. 1994). Our review of the record indicates that trial counsel chose to meet the prosecutor's characterization about the Arizona offenses through re-direct examination of Appellant and in his final argument rather than by continuing to object. We are unable to conclude that counsel's decision to take this approach is so outrageous that no competent attorney would have engaged in it. For these reasons, we find Appellant has not established ineffective assistance of counsel by a preponderance of the evidence. Issue Two is overruled. Having overruled both issues presented on appeal, we affirm the judgment of the trial court.

July 29, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Hill, JJ.
Hill, C.J. (Ret.), sitting by assignment

(Do Not Publish)